# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

AARON D. LAWRENCE,

          Plaintiff,

   v.                                      Case No. 08-C-108

OFFICER JOSEPH LEWANDOWSKI,
OFFICER KATIE GIERACK,
OFFICER NELSON,
OFFICER RANDOLPH G. SCOTT,
OFFICER MARK S. TEBO,
OFFICER DENNIS M. DAVIDSON,
DETECTIVE TECHNICIAN LISA HUDSON,
DETECTIVE MICHAEL A. DEISINGER,
DETECTIVE RALPH R. TORREZ,
and CITY OF WAUWATOSA,

          Defendants.

# DECISION AND ORDER

The plaintiff, Aaron Lawrence, who is proceeding *pro se*, lodged a complaint alleging that his civil rights were violated. The court granted the plaintiff's petition to proceed *in forma pauperis* and has given him several opportunities to amend his complaint. This matter is now before the court on the plaintiff's motion to amend the complaint and for screening of the plaintiff's amended complaint.

## MOTION TO AMEND COMPLAINT

Leave to amend a pleading should be freely given "when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). The decision on whether to allow the amendment is within the discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying a motion to amend include "undue delay, bad faith, dilatory

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Id.* at 182.

In this case, the plaintiff was directed to file a motion to amend his complaint to name the individuals he intended to sue as defendants. He has done so. Thus, the court will grant the plaintiff's motion to amend complaint and construe the document as the plaintiff's amended complaint. Because the defendants are named on the page entitled "Motion to Amend Complaint," and the next page begins with the "Statement of Facts," the court will consider the entire document the plaintiff's amended complaint and will use the court's pagination at the bottom of each page rather than the page numbers used by the plaintiff.

In the caption of the amended complaint, the plaintiff lists the defendants simply as "Grbich, et al." (Am. Compl. at 1). Normally, an individual must be named in the caption to become a party. *Myles v. United States*, 416 F.3d 551 (7th Cir. 2005). It is unacceptable for a court to add litigants on its own motion. *Id.* However, it is clear to the court that the plaintiff intends to amend his complaint to sue the individuals named in their individual capacities, as well as the Wauwatosa Police Department. Thus, the court will consider the plaintiff's claims against the following defendants: Officer Joseph Lewandowski, Officer Katie Gierack, Officer Nelson, Officer Randolph G. Scott, Officer Mark S. Tebo, Officer Dennis M. Davidson, Det.

2

Tech. Lisa Hudson, Det. Michael A. Deisinger, Det. Ralph R. Torrez, and the Wauwatosa Police Department.

The court notes that the plaintiff also named Officer Roger W. Mortens as a defendant, but the complaint contains no allegations of personal involvement by Officer Mortens. Thus, he will be dismissed as a defendant in this action.

## SCREENING OF AMENDED COMPLAINT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

3

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. Legal conclusions must be supported by factual allegations. *Id.* If there

are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## I.    AVERMENTS IN AMENDED COMPLAINT

On August 10, 2006, at approximately 6:10 a.m., the plaintiff entered Walter's, a bar in Wauwatosa, Wisconsin, through the back door. (Am. Compl. at 2). The plaintiff alleges that he intended only to use the restroom. *Id.* He headed towards the bathroom, but realized it was occupied. *Id.* He then heard a click that he believed was the engagement of a gun. *Id.* The plaintiff turned from the restroom to the exit, but was confronted at gunpoint by defendant Grbich. *Id.* Grbich and the plaintiff had a conversation in which the plaintiff explained that he came in to use the restroom and possibly to get something to eat. *Id.* He also explained that he had

5

some change, but had lost the bulk of his currency through a hole in his pocket, and he showed Grbich his pocket. *Id.*

Grbich lowered the gun, walked back to the bar and informed the plaintiff that he was just part of the cleaning crew and that the cook would not be in until 10:00 a.m. (Am. Compl. at 2-3). The plaintiff sat down on a bar stool, "feeling rejected and snubbed." (Am. Compl. at 3). Defendant Castor emerged from the restroom and Grbich told Castor that the plaintiff was there to rob them. *Id.* The plaintiff characterized Grbich's statement to Castor as a "slanderous accusation." *Id.* The plaintiff stated that he was not there to rob anyone, but Grbich told Castor to get some pool cues. *Id.* Armed with a pool cue, Grbich told the plaintiff to leave and never come back. *Id.* The plaintiff remained silent because he was unsure how to react. *Id.* Grbich walked back past the plaintiff, went behind the bar, offered the plaintiff some change and threw two rolls of quarters at him. *Id.* One of the rolls broke open. *Id.*

Grbich and Castor picked up the quarters and put them on the bar in front of the plaintiff. (Am. Compl. at 4). The plaintiff picked up the quarters and put them in his front right pocket. *Id.* Grbich told the plaintiff that he wouldn't call the police if the plaintiff just left. *Id.* Grbich then offered the plaintiff one more roll of quarters. *Id.* The plaintiff sarcastically responded, "how about two?" *Id.* Castor then came from behind the bar armed with a pool cue and told the plaintiff he was only getting one. *Id.* Castor told the plaintiff, "Get your black ass out of here" and struck the plaintiff

6

on the left side of his head with the pool cue. *Id.* Grbich then struck the plaintiff's body with a pool cue. *Id.* The plaintiff regained his footing and took a set of keys off the bar. *Id.* He escaped out the back door and fled "in fear for his life." (Am. Compl. at 5).

Grbich and Castor chased the plaintiff out of the bar. *Id.* The plaintiff asserts that he narrowly avoided being struck by a black SUV driven by Grbich when he crossed the street several blocks later. *Id.* The plaintiff cut through several lawns to avoid being taunted by Grbich from the car. *Id.* Meanwhile, Castor called the Wauwatosa police and reported an armed robbery. *Id.*

The plaintiff ran towards a Wauwatosa police offer. *Id.* Officer Lewandowski had his gun drawn and pointed in the direction of the plaintiff. *Id.* Nevertheless, the plaintiff continued towards the officer for safety, but he slipped on wet grass. *Id.* Officer Lewandowski ordered the plaintiff to stay down, and the plaintiff complied by rolling onto his stomach face down. *Id.* After a verbal exchange in which Officer Lewandowski asked the plaintiff for a knife, the plaintiff reached for his back pocket and was suddenly immobilized by a tazer. (Am. Compl. at 5-6).

The plaintiff was subsequently searched by a female officer. (Am. Compl. at 6). The plaintiff was handcuffed and, after the search, put in a squad car. *Id.* No knife was found. *Id.* The plaintiff had a hard time breathing in the back of the squad car with the windows up. *Id.* At the time, the plaintiff also noticed that his pants were wet in the groin area because he had urinated during the surge from the tazer. *Id.*

7

The plaintiff repeatedly asked one of the officers to roll down the squad car window. (Am. Compl. at 7).  Officers Lewandowski, Gierack and Nelson ignored the plaintiff's request.  *Id.*

During booking at the Wauwatosa Police Department, the plaintiff began suffering from chest pains.  *Id.*  His requests for medical assistance were met with insults.  *Id.*  At approximately 11:05 a.m., the plaintiff began an interview with Detective Ralph Torrez and Detective Dennis Davidson.  (Am. Compl. at 8).  The plaintiff informed defendants Torrez and Davidson of "the serious medical needs and hunger."  *Id.*  The plaintiff was offered a cup of water and promised that he would be free after the interview.  *Id.*  At 2:50 p.m., defendant Hudson made contact with the plaintiff to obtain a buccal swab.  *Id.*  She indicated that he would be given something to eat and receive medical attention if he submitted a swab.  *Id.*

The plaintiff asks for monetary damages from all of the defendants.  (Am. Compl. at 11).  He also asks for punitive damages from the detectives and officers of the Wauwatosa Police Department.  *Id.*

## II.    DISCUSSION

### A.    Claims against Grbich and Castor

The plaintiff's claims against defendants Grbich and Castor do not arise under § 1983.  The plaintiff does not suggest that they were acting under the color of state law.  Rather, he brings claims against these defendants under the Civil Rights Act of 1964 and 42 U.S.C. § 1981, as well as a tort claim for defamation of character.

8

First, the plaintiff avers that he was subjected to racial discrimination in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, when Grbich refused him service and told him to leave and never come back and when Castor called him a "racial name." (Am. Compl. at 9). Title II of the Civil Rights Act of 1964 provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a. However, unlike many other civil rights statutes, 42 U.S.C. § 2000a allows only for prospective relief and does not authorize damages. *See* 42 U.S.C. § 2000a-3; *Bass v. Parkwood Hosp.*, 180 F.3d 234, 244 (5th Cir. 1999) (citing *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400 (1968)); *see also Hornick v. Noyes*, 708 F.2d 321, 324 (7th Cir. 1983). Thus, even accepting as true the plaintiff's allegations that he was discriminated against on the basis of his race, this statute does not provide a cause of action for damages against the defendants. *See Bass*, 180 F.3d at 244.

The plaintiff also makes allegations of intentional infliction of emotional distress and profile discrimination under Section 1981 of Title 42 of the United States Code, which provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, as is enjoyed by white citizens . . ." and defines making and enforcing of contracts as "the making, performance, modification, and termination of contracts and the

9

enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981. More commonly, litigants invoke § 1981 to assert their rights to be free from discrimination while making and enforcing employment contracts, but courts have evaluated § 1981 claims made by plaintiffs who allege that they faced illegal discrimination in retail establishments. *See Morris v. Office Max, Inc.*, 89 F.3d 411 (7th Cir. 1996). To establish a prima facie claim under § 1981, the plaintiff must show that: (1) he is a member of a racial minority; (2) the defendants had the intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract. *Id.* at 413. According to the plaintiff, there were just the three men in the bar and Grbich made clear to the plaintiff that they were unable to sell him food. Thus, there was no contract to be made or enforced. The plaintiff has not set forth a claim under § 1981.

Finally, the plaintiff asserts a proposed defamation of character claim against defendant Grbich based on Grbich telling defendant Castor that the plaintiff was there to rob them, and Grbich throwing money at the plaintiff to degrade his presence and his intention. The complaint fails to allege sufficient facts to indicate that these claims would constitute violations of federal law. Further, the complaint fails to contain allegations sufficient to permit the court to exercise its jurisdiction on the basis of the diversity of the parties. *See* 28 U.S.C. § 1332; *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 676 (7th Cir. 2006). Therefore, the only way these complaints may be pursued in federal court is if they constitute violations

10

of state law, thereby making it appropriate for the court to exercise its supplemental jurisdiction over these claims due to the fact that they are related to the plaintiff's underlying federal law claims. *See* 28 U.S.C. § 1367. However, the plaintiff has stated no federal claim against defendant Grbich. Therefore, the court declines to exercise supplemental jurisdiction over this claim under § 1367.

**B.      Fourth Amendment Claims**

First, the plaintiff submits that Officer Lewandowski acted maliciously and sadistically when he used the tazer, which constituted an excessive use of force. An arrestee's claim for excessive force is analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. The amount of permissible force depends on the specific situation, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

In determining whether an officer's use of force is reasonable, courts must balance the nature and quality of the intrusion upon the individual's Fourth Amendment rights against the countervailing government interests at stake. *Johnson v. LaRabida Children's Hosp.*, 372 F.3d 894, 898 (7th Cir. 2004). Reasonableness is judged from the perspective of whether the officer's actions were

11

objectively reasonable in light of the facts and circumstances confronting the officer at the time. *Id.* When assessing whether the amount of police force was reasonable, the court looks to circumstances indicating: (1) the severity of the suspected crime; (2) whether the suspect posed an immediate threat to the officer on the scene or others; and (3) whether the suspect was actively resisting or attempting to evade arrest. *Id.* At this time, the court will allow the plaintiff to proceed on a Fourth Amendment claim that Officer Lewandowski's use of the tazer was an excessive use of force.

Second and third, the plaintiff presents a cruel and unusual punishment claim and a medical care claim, both under the Eighth Amendment. However, both claims are properly considered under the Fourth Amendment. The Seventh Circuit "recognized in *Lopez v. City of Chicago* that the Fourteenth Amendment's due process protections only apply to a pretrial detainee's confinement conditions after he has received a judicial determination of probable cause." *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007) (citing *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006)). Claims regarding conditions of confinement for arrestees such as the plaintiff, who have not yet had a judicial determination of probable cause, are instead governed by the Fourth Amendment and its "objectively unreasonable" standard. *Id.*

In *Sides v. City of Champaign*, 496 F.3d 820 (7th Cir. 2007), the Seventh Circuit clarified what is "objectively unreasonable" in the context of a medical needs

12

case.  There are four factors that influence the analysis of a plaintiff's claims of inadequate medical care under the Fourth Amendment:  (1) whether the officer had notice of the arrestee's medical need, either through words or observation; (2) the seriousness of the medical need, including whether complaints are accompanied by any physical symptoms; (3) the scope of the requested treatment, which is to be balanced against the second factor; and (4) police interests.  *Williams*, 509 F.3d at 403 (citing *Sides*, 496 F.3d at 828).

According to the plaintiff, defendants Lewandowski, Gierack and Nelson ignored his repeated pleas to roll down the window of the squad car while the plaintiff was having a hard time breathing in the back of the squad car with the windows rolled up.  (Am. Compl. at 6-7).  The plaintiff did not complain of a medical problem or ask for medical attention; he merely asked the defendants to roll down the window of the squad car.  Accordingly, the plaintiff will be allowed to proceed on a Fourth Amendment claim against defendants Lewandowski, Gierack and Nelson for their treatment of him while he was in the squad car, but it will be a general claim under the Fourth Amendment rather than a medical care claim.

The plaintiff further avers that he began suffering from chest pains during booking at the Wauwatosa police station.  He repeatedly requested medical attention, but his requests "were met with insults."  (Am. Compl. at 7).  The plaintiff does not identify any defendant who denied his requests for medical attention and insulted him instead.  However, the plaintiff did inform defendants Torrez and

Case 2:08-cv-00108-JPS   Filed 09/09/09   Page 13 of 21   Document 14

Davidson "of the serious medical needs and hunger" during an interview that began at 11:05 a.m. (Am. Compl. at 8). He was offered a cup of water and promised that he would be fed after the interview. *Id.* At 2:50 p.m., defendant Lisa Hudson, a detective technician, made contact with the plaintiff to obtain a buccal swab. *Id.* She told the plaintiff that he would be given something to eat and receive medical attention if he consented and submitted a swab. *Id.* The plaintiff also avers that defendants Scott, Tebo, Davidson, Deisinger, Torrez, and Hudson either directly participated in the wrong or knew about it and failed to stop it. (Am. Compl. at 10). The court will allow the plaintiff to proceed on a Fourth Amendment claim against these defendants regarding his treatment while at the police station.

### C.    Policy Claims

The plaintiff also submits a proposed claim against the "Wauwatosa Police Department for failure to oversee the people who caused the wrong such as by hiring unqualified people or failing to adequately train the staff or created a policy or custom that allowed the wrong to occur." (Am. Compl. at 10).

As an initial matter, a police department is not a suable entity under § 1983. *Best v. City of Portland*, 554 F.3d 698 (7th Cir. 2009) (citing *Chan v. Wodnicki*, 123 F.3d 1005, 1007 (7th Cir. 1997); *West v. Waymire*, 114 F.3d 646, 646-47 (7th Cir. 1997)). However, in *Best*, the Seventh Circuit "adjusted the caption accordingly" to name the City of Portland rather than the Portland Police Department. *Best*, 554

14

F.3d at 698. This court will do the same and will substitute the City of Wauwatosa for the Wauwatosa Police Department.

Although a municipality cannot be held liable under § 1983 solely on the grounds of *respondeat superior*, the government as an entity is responsible "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts may fairly be said to represent official policy, inflicts the injury." *Monell v. City of New York Department of Social Services*, 436 U.S. 658, 691 (1978). To hold the defendant municipality liable under Section 1983, the plaintiff must demonstrate the constitutional deprivation was caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by officers." *Id.* at 690. There must be a direct causal link between the alleged unconstitutional deprivation and the municipal policy or custom at issue. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

To the extent that the plaintiff sought to hold the municipality responsible for its failure to oversee the people who caused the wrong, the claim will be dismissed. The plaintiff will be allowed to proceed on a policy claim against the City of Wauwatosa for failing to adequately train police officers. There are limited circumstances when "failure to train" may be a basis for municipal liability under § 1983. *City of Canton*, 389 U.S. at 388. Inadequacy of police training may only serve as a basis for municipal liability where the failure to train amounts to deliberate indifference to rights of persons with whom the police come in contact. *Id.*

15

The plaintiff will also be allowed to proceed on a policy claim against the City of Wauwatosa for creating a policy or custom regarding the use of a tazer or the handling of arrestees that caused the wrong to the plaintiff.

**D.    Unlawful Seizure of Property**

The plaintiff contends that several items of personal property were never returned to him by the Wauwatosa Police Department, including two Nokia cell phones, one headset, a Motorola cell phone, and $5.16 in change.  As discussed above, the Wauwatosa Police Department is not a suable entity under § 1983.  *Best*, 554 F.3d at 698.  However, the court has substituted the City of Wauwatosa for the Wauwatosa Police Department.

The Due Process Clause of the Fourteenth Amendment "provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures."  *Germano v. Winnebago County*, 403 F.3d 926, 928 (7th Cir. 2005) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)).  Thus, when property is taken by government action, due process generally requires that the government provide an "opportunity to present reasons, either in person or in writing, why proposed action should not be taken . . . ."  *Germano*, 403 F.3d at 928 (quoting *Cleveland*, 470 U.S. at 546).

An individual is entitled to an opportunity for a hearing before the state permanently deprives him of his property.  *Parratt v. Taylor*, 451 U.S. 527, 540 (1981), overruled in part on other grounds by *Daniels v. Williams*, 474 U.S. 327

16

(1986). However, where a deprivation of a constitutionally protected property interest is caused by a state employee's random, unauthorized conduct, it does not give rise to a § 1983 procedural due process claim unless the state fails to provide an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

Wisconsin law provides tort remedies to individuals whose property has been converted or damaged by another. *See* Wis. Stat. §§ 893.34 and 893.51. If a deprivation of property did not occur as the result of some established state procedure (which the plaintiff does not allege) and state law provides an adequate post-deprivation remedy for redressing the missing property, due process has been satisfied. *Parratt*, 451 U.S. at 543-44; *see also Hamlin v. Vaudenberg*, 95 F.3d 580, 585 (7th Cir. 1996) (holding that Wisconsin's post-deprivation procedures are adequate, albeit in a different context). Thus, the plaintiff's claim for deprivation of property will be dismissed.

### E. Defamation of Character Claim

Finally, the plaintiff asserts a proposed defamation of character claim against all named police officers for harassing him and taunting him in regards to his urine-soiled pants. (Am. Compl. at 9). Under Wisconsin law, defamation claims require that "the particular words complained of shall be set forth in the complaint." Wis. Stat. § 802.03. The plaintiff has not set forth the particular words that he asserts individual officers used to taunt him. Therefore, the court will not allow the plaintiff to proceed on an independent defamation claim against the named police officers.

17

However, any taunting of the plaintiff regarding his urine-soiled pants will be part of the factual basis for the plaintiff's Fourth Amendment claim regarding whether officers were objectively reasonable in their handling of the plaintiff after his arrest.

## CONCLUSION

In summary, the court finds that the plaintiff has alleged sufficient facts to support the following claims: (1) a Fourth Amendment excessive force claim against defendant Lewandowski for the use of the tazer; (2) a Fourth Amendment claim against defendants Lewandowski, Gierack and Nelson regarding their actions towards the plaintiff while he was in the squad car; (3) a Fourth Amendment claim against defendants Scott, Tebo, Davidson, Deisinger, Torrez, and Hudson regarding their treatment of the plaintiff at the police station; and (4) police claims against the City of Wauwatosa for failure to adequately train police officers and for creating policies or customs regarding the use of the tazer and/or the treatment of arrestees that caused the wrong to the plaintiff.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion to amend complaint (Docket #11) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall docket the plaintiff's November 17, 2008 motion to amend complaint as the Amended Complaint in this case.

**IT IS FURTHER ORDERED** that the following parties will be **DISMISSED** as defendants in this action: John Castor, George M. Grbich, Jr., and Officer Roger W. Mortens.

**IT IS FURTHER ORDERED** that the following parties shall be added as defendants in this action: Officer Joseph Lewandowski, Officer Katie Gierack, Officer Nelson, Officer Randolph G. Scott, Officer Mark S. Tebo, Officer Dennis M. Davidson, Det. Tech. Lisa Hudson, Det. Michael A. Deisinger, Det. Ralph R. Torrez, and the Wauwatosa Police Department.

**IT IS FURTHER ORDERED** that the City of Wauwatosa shall be substituted for the Wauwatosa Police Department as a defendant in this action.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint, the summons, and this order upon the following defendants pursuant to Federal Rule of Civil Procedure 4: Officer Joseph Lewandowski, Officer Katie Gierack, Officer Nelson, Officer Randolph G. Scott, Officer Mark S. Tebo, Officer Dennis M. Davidson, Detective Technician Lisa Hudson, Detective Michael A. Deisinger, Detective Ralph R. Torrez, and the City of Wauwatosa. The plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because in forma pauperis plaintiffs are

19

indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

**IT IS FURTHER ORDERED** that the remaining defendants shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $350.00 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS FURTHER ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

Plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). Plaintiff should also retain a personal copy of each document. If plaintiff does not have access to a photocopy machine, plaintiff may send out identical handwritten or typed copies of any documents. The court may disregard

20

any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk's Office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 9th day of September, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

21