# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

AARON D. LAWRENCE,

        Plaintiff,

v.                                              Case No. 08-CV-108

OFFICER JOSEPH LEWANDOWSKI,
OFFICER KATIE GIERACK,
OFFICER NELSON,
OFFICER RANDOLPH G. SCOTT,
OFFICER MARK S. TEBO,
OFFICER DENNIS M. DAVIDSON,
DET. TECH. LISA HUDSON,
DET. MICHAEL A. DEISINGER,
DET. RALPH R. TORREZ, and
CITY OF WAUWATOSA,

        Defendants.

## ORDER

The plaintiff, Aaron Lawrence, who is proceeding *pro se*, lodged a complaint alleging that his civil rights were violated. He was allowed to proceed on the following claims: (1) a Fourth Amendment excessive force claim against defendant Lewandowski for the use of the taser; (2) a Fourth Amendment claim against defendants Lewandowski, Gierack and Nelson regarding their actions towards the plaintiff while he was in the squad car; (3) a Fourth Amendment claim against defendants Scott, Tebo, Davidson, Deisinger, Torrez, and Hudson regarding their treatment of the plaintiff at the police station; and (4) policy claims against the City of Wauwatosa for failure to adequately train police officers and for creating policies or customs regarding the use of the taser and/or the treatment of arrestees that

caused the wrong to the plaintiff. Now before the court is the defendants' motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, — F.3d —, 2011 WL 31855, at *3 (7th Cir. Jan. 6, 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show

that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## FACTUAL BACKGROUND

Shortly after 6:30 a.m. on August 10, 2006, City of Wauwatosa police officers Joseph Lewandowski, Katie Gierack, Michael Nelson, and Roger Martens were dispatched to Walter's on North to respond to a reported armed robbery. By the time they arrived, the robbery suspect had fled the scene on foot. An employee at Walter's told Officer Lewandowski that the robbery suspect was a black male wearing a red shirt and a baseball cap and that the owner of Walter's was following the suspect. Several officers arrived and set up a perimeter in the area where the plaintiff was last seen. Officer Lewandowski exited his squad car at 62nd and Clarke. Officer Martens radioed that Lawrence was running in Lewandowski's direction.

According to the plaintiff, he was not armed on August 10, 2006. He entered Walter's to use the restroom, but the owner confronted the plaintiff with a weapon and demanded that he leave. After a lengthy exchange, the plaintiff was struck in the face, head, and body with pool cues. He was forced to flee in fear for his safety while the owner and an employee chased him out the door into the parking lot. Moments later, several blocks away, the plaintiff narrowly escaped being struck by the owner's vehicle. The owner followed the plaintiff and taunted him and swore at

3

him. The plaintiff began to deviate through yards to avoid further harm. This lasted for five to ten minutes.

While taking a brief rest, the plaintiff attempted to phone for a ride, but he was unable to reach his roommate by phone. The plaintiff then began to exit from between two residences in the 2500 block of North 62nd Street. As he emerged through some trees and bushes, the plaintiff noticed a police squad car parked at the corner of 62nd and Clarke. An officer was exiting the car.

The plaintiff sprinted toward the squad car for safety. As the plaintiff was crossing the street heading directly toward the squad car, the plaintiff noticed that the officer had his gun drawn and pointed in his direction. Once the plaintiff saw the gun, he tried to stop and put his hands up, but he slipped and fell, hitting the back of his head on the ground. The plaintiff was disoriented and confused, but he heard a command to roll onto his stomach and complied.

The plaintiff was face down on the ground with hands spread eagle waiting to be secured with handcuffs. The plaintiff was unable to see the officer, but he sounded close, as if directly behind him. The plaintiff did not turn around for fear of appearing to be a threat and for fear of being shot. Officer Lewandowski asked the plaintiff which pocket the knife was in. The plaintiff was confused and responded, "what knife?" Officer Lewandowski continued his inquiries about the whereabouts of a knife.

4

While the plaintiff was on his knees with his back to the officer, he pointed in the direction of the last time he saw the owner's car and said that someone was trying to harm him. While talking, the plaintiff indicated with his hands in an attempt to show that he was not armed with any weaponry. The plaintiff patted his back pockets and said, see, look, I do not have a knife. The plaintiff then put both of his hands in his back pockets to reveal the contents. The plaintiff avers that he was not told to stay down or to remove his hands from his pockets. As the plaintiff was removing his hands from his pockets with the contents, he was suddenly immobilized from a taser.

The plaintiff was barely coherent, but he heard Officer Lewandowski continue his interrogation of the whereabouts of a knife with a threat of another surge from the taser if the plaintiff did not concede to their allegation of weaponry. Officer Lewandowski asked the plaintiff if he wanted kids to find it and instructed the plaintiff to tell them where the knife is or be tasered again. The plaintiff was on his back having difficulty breathing and was not able to respond. He was tasered again, but he is unsure how many times or for how long.

The plaintiff was placed in handcuffs, searched and placed in the squad car. In the car, the plaintiff became dizzy and started having difficulty breathing. He begged for the officers' attention in an attempt to persuade Gierack, Lewandowski, Nelson, or Martens to roll down the window. The plaintiff's pleas were met with accusation and threats and one voice stated, tell us where the knife is. The windows

5

were never rolled down. The plaintiff then became unconscious, but he does not know for how long. The plaintiff heard his name repeatedly as he regained consciousness. He realized that the officer was accusing him of causing a police accident. The plaintiff then realized that his pants were soiled from his urine.

The plaintiff arrived at the Wauwatosa police station and awaited booking for an hour or two with his hands still handcuffed behind his back the majority of the time. Eventually, passers by began asking the plaintiff if he had ever been tasered before, whether it hurt, and what did it feel like. Someone said that they could see that the plaintiff had a little accident, referring to the plaintiff's visibly soiled jeans due to urination after being tasered. The plaintiff believes he replied that his head hurt, his chest hurt, his back is bleeding, and his pants are wet. He also was angry that he was arrested instead of the person chasing him. He accused people of treating him like an animal as if he did not have any dignity and teasing and laughing at him while he sat in soiled clothing. He concluded that his pride was hurt and that people cannot treat him like that and threatened to sue.

Once the plaintiff was in a cell, Detective Torrez came and said he wanted to ask the plaintiff some questions. The plaintiff refused to speak. The detective returned several minutes later, and the plaintiff again refused to speak. After an exchange with Detective Torrez for a couple of minutes, the plaintiff was promised something to drink. Detective Torrez escorted the plaintiff to an interview room to talk to him and Detective Michael Deisinger. The plaintiff told the detective he was

6

thirsty and unable to drink the water in the cell because it was a dark rust color. The detectives offered the plaintiff a cup of water. They said the interview would not take long and they possibly could get the plaintiff a ham sandwich. When the plaintiff responded that he does not eat pork, the detectives said maybe a hamburger or something like that.

During the interview, the plaintiff pointed out where the probes punctured the skin on his back, causing bleeding. He also demonstrated where he was repeatedly hit by pool cues. The plaintiff asked the detectives for a pair of pants that were not soiled.

Later, Detective Technician Lisa Hudson appeared at the plaintiff's cell, and the plaintiff told her that he was not feeling well. The plaintiff asked Hudson if she could get him something to drink. He showed her the rust colored water. Hudson then introduced herself and told the plaintiff that she would get him something to eat if he signed a consent to a DNA swab. The plaintiff asked why she needed a DNA swab, and she said they wanted to check the pool cues and compare. The plaintiff signed the consent form in return for food, but Hudson never returned with food. The plaintiff avers that he often inquired for something to eat. An unknown officer told the plaintiff that he would get something to eat when he got to Milwaukee County Jail.

In addition to the plaintiff's recollection of his time at the Wauwatosa Police Department, a log was kept of cell checks on the plaintiff on August 10, 2006. It

7

reveals that the plaintiff was placed in a holding cell at about 8:25 a.m. Cell checks were conducted on the plaintiff at 9:20 a.m., 9:45 a.m., and 10:25 a.m., and he was found to be sleeping at all of these cell checks. At 11:01 a.m., the plaintiff was removed form his cell by Detective Torrez and taken to an interview room. The plaintiff was returned to his cell at 12:38 p.m.

Although the plaintiff makes no reference to leaving the Wauwatosa Police Department in his affidavit, the log reveals that the plaintiff was transported to the Wisconsin Heart Hospital for medical clearance at 1:00 p.m. Medical clearance is required prior to transferring a prisoner to the Milwaukee County Criminal Justice Facility anytime a prisoner has been tased. After medical clearance, the plaintiff was transported back to the Wauwatosa Police Department and returned to his cell at 1:35 p.m.

The log further reveals that the plaintiff was fed at 1:41 p.m. At 2:40 p.m., a cell check was done on the plaintiff which indicates he was sleeping at that time. At about 2:50 p.m., Detective Technician Hudson made contact with the plaintiff and obtained a buccal swab from him. The plaintiff signed a Consent to Search form prior to submitting to the buccal swab. At 3:40 p.m., Hudson gave the plaintiff something to eat and drink. Cell checks were conducted on the plaintiff at 5:00 p.m., 6:05 p.m., and 7:00 p.m., and he was sleeping each time. A cell check was conducted at 8:00 p.m. and the plaintiff was awake. At 9:00 p.m., the plaintiff was transported and turned over to the Milwaukee County Criminal Justice Facility.

8

**DISCUSSION**

The defendants submit that they are entitled to summary judgment because Officer Lewandowski's use of the taser was reasonable, the officers were not unreasonable in their dealings with the plaintiff in the squad car, the plaintiff's treatment at the police station was not unreasonable, and the City of Wauwatosa did not maintain any illegal policies or practices with regard to the use of tasers or the treatment of inmates, and the defendants were properly trained. The plaintiff maintains that excessive force was used to effect his arrest, that he was treated unreasonably in the squad car and at the police station, and that the Wauwatosa Police Department had policies and officer training that violated his constitutional rights.

**A. Excessive Force Claim**

The plaintiff was allowed to proceed on a Fourth Amendment excessive force claim against defendant Lewandowski for the use of the taser. An arrestee's claim for excessive force is analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "The inquiry requires an examination of the 'totality of the circumstances to determine whether the intrusion on the citizen's Fourth Amendment interests was justified by the countervailing government interests at stake.'" *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010) (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000)).

> The nature and extent of the force that may reasonably be used to effectuate an arrest depends on the specific circumstances of the arrest, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. ... Because law-enforcement officers must make critical, split second decisions in difficult and potentially explosive situations, *Graham*, 490 U.S. at 397, 109 S.Ct. 1865, we evaluate the reasonableness of the officer's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," *id.* at 396, 109 S.Ct. 1865.

*Cyrus*, 624 F.3d at 861-62.

In *Cyrus*, the Seventh Circuit found that conflicting evidence about how much force was used was a material dispute of fact that precluded summary judgment "because the amount of force used bears directly on whether that force was a reasonable response to the situation faced by the officer." *Id.* at 862. In this case, there is a dispute over the number of times the taser was deployed. Affidavits from Officers Lewandowski and Martens assert that the taser was deployed just once. In contrast, the plaintiff avers that he was tasered again after the first time, but he is unsure how many times or for how long. This dispute is not material, though, because in this case Officer Lewandowski's use of the taser was objectively reasonable whether it was deployed once, or two or more times.

At most, Cyrus had committed a misdemeanor offense. He was not exhibiting violent behavior, and the officer who tased him knew that Cyrus was unarmed. *Id.* at 863. Also, there was little risk that Cyrus could access a weapon while face down

10

with his hands underneath him and having already been shocked twice with the taser. *Id.* Moreover, the officer knew Cyrus and was aware of his mental illness, and Cyrus had never acted violently toward him. *Id.*

This case could not be more different. The plaintiff was unknown to Officer Lewandowski, who was responding to a call about a possible armed robbery. The plaintiff was believed to be carrying a knife and was on the run from the scene of the alleged crime. Even in his own version of events, presented above, the plaintiff admits that he was moving his arms around, patted his back pockets and then put his hands in his back pockets in response to questions regarding the whereabouts of a knife. It was reasonable for Officer Lewandowski to believe that the plaintiff was armed and dangerous and that he was reaching for his weapon in his pockets. The court will grant Officer Lewandowski's motion for summary judgment on this claim.

**B.     Conditions of Confinement Claims**

The plaintiff was allowed to proceed on a Fourth Amendment claim against defendants Lewandowski, Gierack and Nelson regarding their actions towards the plaintiff while he was in the squad car after his arrest. Claims regarding conditions of confinement for arrestees are governed by the Fourth Amendment and its "objectively unreasonable" standard. *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007) (citing *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006)).

Even viewed in the light most favorable to the plaintiff, the officers' actions toward the plaintiff while he was in the squad car are not objectively unreasonable,

11

given the circumstances of his arrest. The plaintiff's averments regarding his time in the squad car boil down to the defendants not rolling down the window when he asked, an unidentified officer accusing him of causing a car accident that involved a police car, and the plaintiff realizing that his pants were soiled because he had urinated on himself. Based on the totality of the circumstances that had already occurred that morning, any intrusion by these actions on the plaintiff's Fourth Amendment interests while he was in the squad car was reasonable. *See Cyrus,* 624 F.3d at 861.

The plaintiff also was allowed to proceed on a Fourth Amendment claim against defendants Scott, Tebo, Davidson, Deisinger, Torrez, and Hudson regarding their treatment of the plaintiff at the police station. The plaintiff's affidavit does not implicate all of the named defendants. However, the evidence reveals that the treatment of the plaintiff at the Wauwatosa Police Department was not unreasonable so the court need not separate those defendants who were included and those who were not.

The plaintiff waited for awhile to be booked and had interactions with unidentified individuals. He admits that he was angry that he was arrested instead of the person chasing him. After being booked and placed in a holding cell, the plaintiff was able to sleep for awhile before talking to Detectives Torrez and Deisinger. During his interview with the detectives, the plaintiff was offered water.

12

He also showed the detectives where the probes punctured the skin on his back causing bleeding, and where he was repeatedly hit by pool cues.

Approximately 20 minutes after he was returned to his cell, the plaintiff was taken to the Wisconsin Heart Hospital for medical clearance. In his affidavit, the plaintiff conveniently fails to mention his trip to the Wisconsin Heart Hospital, though he acknowledges that it happened in other pleadings. The court is unable to consider the substance of his visit to the hospital because of the plaintiff's failure to provide the defendants with the required authorization to release the medical records. However, based on the fact that the plaintiff was quickly returned to the Wauwatosa Police Department and later transferred to the Milwaukee County Jail, the court can reasonably infer that the plaintiff was medically cleared for transfer.

Upon his return from the hospital, the plaintiff was able to sleep again. Later, Detective Technician Hudson communicated with the plaintiff about a consent to search form and a DNA swab. Thereafter, the plaintiff slept again. About an hour after the plaintiff was awake at a cell check, he was transported to the Milwaukee County Jail.

There is a dispute over whether the plaintiff was fed while in the custody of the Wauwatosa Police Department. The plaintiff avers that he asked for food repeatedly and never received it. In contrast, the cell check log notes that the plaintiff was fed at 1:41 p.m. and 3:40 p.m. Even if the plaintiff was not fed during his approximately twelve hours at the Wauwatosa Police Department, he was given water and medical

13

treatment and allowed to sleep. Overall, the treatment of the plaintiff was reasonable. *See Cyrus*, 624 F.3d at 861. The court will grant the defendants' motion for summary judgment with regard to these claims.

## C. Claims Against City of Wauwatosa

Finally, the plaintiff was allowed to proceed on policy claims against the City of Wauwatosa for failure to adequately train police officers and for creating policies or customs regarding the use of the taser and/or the treatment of arrestees that caused the wrong to the plaintiff. The defendants submit that they are entitled to summary judgment on each of these claims.

First, the defendants submit that the Wauwatosa Police Department had a policy in effect on August 10, 2006, regarding the use of the TASER and that Officer Lewandowski is certified in the use of the TASER. In his response, the plaintiff challenges substantive portions of the TASER policy, but he has no expert testimony supporting his position and no evidence that the policy caused his alleged injuries.

To hold the defendant municipality liable under Section 1983, the plaintiff must demonstrate the constitutional deprivation was caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by officers." *Monell v. City of New York Department of Social Services*, 436 U.S. 658, 690 (1978). There must be a direct causal link between the alleged unconstitutional deprivation and the municipal policy or custom at issue. *City of Canton v. Harris*, 489 U.S. 378,

14

385 (1989). The plaintiff has provided no evidence of such a link and, therefore, his claim must fail.

Second, there are limited circumstances when "failure to train" may be a basis for municipal liability under § 1983. *City of Canton*, 389 U.S. at 388. However, inadequacy of police training may only serve as a basis for municipal liability where the failure to train amounts to deliberate indifference to rights of persons with whom the police come in contact. *Id.*

The defendants submit that the training of police officers in Wisconsin is governed by state law. The Law Enforcement Standards Board prescribes minimum requirements for police officer training. *See* Wis. Stat. § 165.85(3). The plaintiff admitted in his deposition that he has no personal knowledge regarding the training of Wauwatosa Police Department officers. Nor has he presented evidence that the Wauwatosa Police Department has failed to comply with the state-mandated police officer training. Moreover, the plaintiff has failed to present any evidence that he suffered a constitutional injury due to a failure to train Wauwatosa police officers.

The Seventh Circuit's decision in *Tapia v. City of Greenwood*, 965 F.2d 336, 339 (7th Cir. 1992), is dispositive of the plaintiff's failure to train claim. In *Tapia*, the question was whether the defendant city had adequately trained police officers regarding procedures for warrantless searches. The city showed that it was in compliance with the minimum standards for training officers under Indiana law and that the officers involved had received such training. The court held that where

a state imposed minimum training standards on municipalities, evidence showing adherence to those standards barred any finding that the city was deliberately indifferent to the need for better training. *Id.* Under *Tapia*, compliance by a municipality with such standards defeats any possibility that a reasonable jury could uphold a charge of deliberate indifference.

**D.    Qualified Immunity**

The defendants also argue that they are entitled to qualified immunity. The Supreme Court of the United States has articulated a two-part test for qualified immunity: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right; and (2) whether the constitutional right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Supreme Court recently revisited *Saucier* and held that "because the two-step Saucier procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decision [that] will best facilitate the fair and efficient disposition of each case." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 821 (2009). In this case, because the court has determined that the plaintiff's constitutional rights were not violated, the court need not reach the question of whether the defendants are entitled to qualified immunity.

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (Docket #38) be and the same is hereby **GRANTED**, and this action be and the same is herewith **DISMISSED with prejudice.**

The Clerk of Court is ordered to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 16th day of March, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge